**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**JACQUELINE TUCKER,**

        **Plaintiff,**

**v.**

                 **18-CV-812(HKS)**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. #15.

Jacqueline Tucker ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##10, 13.

## BACKGROUND

On June 12, 2014, Plaintiff filed applications for DIB and SSI alleging disability beginning April 11, 2014. T. 161-73.[1] Her initial application was denied, and a hearing was held before Administrative Law Judge ("ALJ") Lynette Gohr on May 16, 2017, in Buffalo, New York. T. 31-68. On September 26, 2017, the ALJ issued a decision finding Plaintiff not disabled. T. 18-40. The Appeals Council denied Plaintiff's request for review on July 19, 2018, making the ALJ's determination the final decision of the Commissioner. T. 1-6. This action followed. Dkt. #1.

## The ALJ's Decision

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA"), *see* 20 C.F.R. §§ 404.1520, 416.920; *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found that: (1) Plaintiff did not engage in substantial gainful activity since April 11, 2014, the alleged onset date; (2) she had the severe impairments of congestive heart failure, coronary artery disease, obstructive sleep apnea, morbid obesity, and sarcoidosis; and (3) her impairments did not meet or equal the Listings set forth at 20 C.F.R. § 404, Subpt. P, Appx. 1. The ALJ next found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a),[2] except that she could occasionally climb ramps and stairs, could never

---

[1] Citations to "T.__" refer to the pages of the administrative transcript. Dkt. #9-1 through 9-13.

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "Although a

climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and occasionally reach overhead with the bilateral upper extremities. Additionally, Plaintiff could not work at unprotected heights or around dangerous machinery; she must avoid concentrated exposure to extreme heat, extreme cold, humidity, wetness, dust, odors, fumes, and pulmonary irritants; and there could be no strict production quotas. T. 24-27. Continuing to the fourth step of the disability analysis, the ALJ found that Plaintiff could perform her past relevant work as an insurance clerk and appointment clerk. T. 32. Accordingly, the ALJ determined that Plaintiff was not disabled under the Act. T. 33.

## DISCUSSION AND ANALYSIS

### Scope of Judicial Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

---

sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id*. "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id*. "Occasionally" means occurring from very little up to one-third of the time." *Diaz v. Astrue*, No. 11-CV-317, 2012 WL 3903388, at * 6 (D. Conn. Aug. 2, 2012) (citing Social Security Ruling ("SSR") 83-10)).

3

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999), quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam). "Substantial evidence is more than a mere scintilla . . . . It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (quotation marks and citations omitted). This standard is "very deferential . . . even more so than the clearly erroneous standard . . . ." *Id.* at 447-48.

Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions were based upon an erroneous legal standard. *See Green–Younger v. Barnhart*, 335 F.3d 99, 105–106 (2d Cir. 2003).

**Judgment on the Pleadings**

The parties have cross-moved for judgment on the pleadings. Dkt. ## 10, 13. Plaintiff challenges the ALJ's determination on the grounds that: (1) the RFC was unsupported by substantial evidence because the ALJ inappropriately relied upon gaps in the medical evidence "to make negative inferences;" and (2) her evaluation of Plaintiff's subjective complaints was unsupported by substantial evidence. Dkt. #10-1 at 1, 14-30.

4

The Commissioner requests that his determination be affirmed as the ALJ's decision was supported by substantial evidence and is free of legal error. Dkt. #13-1. Plaintiff filed a thorough reply brief (Dkt. #14), which the Court has also considered.

For the reasons that follow, Plaintiff's motion is denied and the Commissioner's motion is granted.

**The ALJ's Formulation of the RFC**

Plaintiff first contends that the ALJ relied solely on her lay opinion in reaching the RFC determination, and that "there lacks any medical opinion supporting the RFC finding." Dkt. #10-1 at 14.

It is well-settled that "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). Where, however, 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity,' a medical source statement or formal medical opinion is not necessarily required . . . ." *Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5, 8 (2d Cir. 2017) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 29, 34 (2d Cir. 2013) (summary order)).

In this case, the ALJ determined that Plaintiff could perform sedentary work with significant additional limitations. T. 27. To support this conclusion, the ALJ engaged in a lengthy discussion of the record evidence, including a physical consultative examination of Plaintiff and medical source opinion by Dr. Hongbiao Liu. The results of that evaluation revealed that Plaintiff was obese, but walked normally and did not use an assistive device, could rise from a chair without difficulty, and get on and off the examination table without assistance. T. 29; 377. Plaintiff had normal neck movement, some lower back movement limitations, normal range of motion in her arms and legs, no sensory deficits, normal (5/5) strength, and her joints were nontender. T. 378. Her hand and finger dexterity was intact, and her grip strength was 5/5 on both sides *Id.* Significantly, as noted by the ALJ, Plaintiff's lungs were clear to auscultation with normal diaphragmatic motion, and her heart rhythm was regular without any audible murmurs, gallops, or rubs. T. 29. Dr. Liu diagnosed Plaintiff with history of heart attack; history of hypertension; history of diabetes; history of gastric reflux disease; history of sarcoidosis; history of sleep apnea; and morbid obesity. He opined that Plaintiff's prognosis was "stable," and that Plaintiff "should avoid moderate exercise activity because of cardiac condition." T. 379. He did not identify any other functional limitations. *Id.* The ALJ afforded this opinion significant weight due to his personal examination of Plaintiff, his familiarity with the SSA's disability program, and the consistency with his own findings as well as other evidence in the record. T. 31. She then discussed the opinion's consistency with the formulated RFC:

> Dr. Liu, a physical consultative examiner, opined only that
> the claimant should avoid moderate exercise due to her
> cardiac condition . . . . This opinion is amply accommodated
> by the above [RFC], which limits the claimant to less than a

6

>full range of sedentary work and includes the provision that
>there can be no strict production quotas.

T. 32.

Thus, contrary to Plaintiff's assertion, the ALJ did rely on a medical opinion in reaching her determination, *see* Dkt. #10-1 at 15, and while the opinion did not contain a function-by-function analysis, an ALJ's RFC finding need not directly mirror any one medical opinion. *See Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (summary order). Rather, an ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole. *Id.* As discussed below, the ALJ fulfilled her obligation in this respect.

While the ALJ thoroughly summarized the treatment notes, T. 28-30, it cannot be said that she simply interpreted the raw medical data in reaching the RFC determination. The ALJ initially discussed the medical evidence relating to Plaintiff's congestive heart failure and "significant" coronary artery disease. She acknowledged a series of hospitalizations relating to chest pain coinciding with the onset date. T. 28. The ALJ evaluated Plaintiff's treatment for congestive heart failure and coronary heart disease as well as her noncompliance with treatment.[3] T. 28. She also discussed the abnormalities documented in an October, 2014, echocardiogram, and Plaintiff's stenting procedures between 2009 and 2013. T. 29. Subsequent testing in October 2015 revealed no evidence of myocardial ischemia and normal left ventricular ejection

---
[3] Plaintiff's noncompliance in managing her symptoms will be discussed more fully in the following section.

fraction. *Id.* The ALJ observed, "[i]nterestingly, the results of the nuclear stress test raised the possibility that the residual diagonal stenosis had been overestimated and was not hemodynamically significant . . . ." *Id.*

On January 23, 2017, treating cardiologist Brian Page, M.D., wrote a letter in support of Plaintiff's disability claim:

> She mentions that she was told that she can work a full time job if it involves desk work only. Of note, her previous position was in a call center as a patient representative. Due to the emotional stress place on her with this type of job, she had multiple emergency room visits which decreased when she stopped working. I discussed with her that returning to this type of job could provoke worsening symptoms and more frequent emergency room encounters. For this reason it may be best for her to avoid returning to this type of work.

T. 883. The ALJ also considered this opinion, albeit according it little weight for a number of reasons. T. 31.[4] Thus, with respect to Plaintiff's cardiac impairments, they were expressly accounted for in the RFC, which limited Plaintiff to a reduced range of sedentary work with no strict production quotas. T. 28-29.

As to Plaintiff's chronic sleep apnea, the ALJ noted that this condition was diagnosed a number of years before the alleged onset date, with little indication that it worsened around that time. T. 29. In October, 2014, Plaintiff's sleep apnea was characterized as stable. *Id.* She was noncompliant with her CPAP machine. T. 29-30, 32. Additionally, Plaintiff had a number of pulmonary abnormalities, such as moderate

---

[4] Plaintiff does not otherwise challenge the ALJ's evaluation of the opinion evidence in the present motion.

tricuspid regurgitation, moderate left atrium dilation, mild pulmonary hypertension, mild aortic regurgitation, and mild aortic valve thickening, diminished left ventricular systolic function. T. 413, 381-82, 393-94, 441. Despite Plaintiff's diagnosis of sarcoidosis (an inflammatory disease affecting the lungs), the ALJ noted that the condition was characterized as being in its first stage, and Plaintiff's pulmonary studies typically resulted in limited findings. T. 30-31. Due to Plaintiff's pulmonary impairments, the ALJ limited her exposure to environmental and pulmonary irritants. T. 32.

The ALJ also assessed Plaintiff's functional limitations in light of her obesity, noting that obese individuals may have limitations in sitting, standing, walking, lifting, carrying, pushing, and pulling, and obesity may reduce climbing, balancing, stooping, and crouching. She observed that the treatment notes "suggest that difficulty breathing caused by bending was likely due to obesity," and concluded that Plaintiff's obesity contributed to her symptoms. T. 30. Plaintiff's restrictions in climbing, balancing, stooping, crouching, crawling are expressly set forth in the RFC. T. 27.

The ALJ assessed Plaintiff's testimony at the administrative hearing, which indicated that bending and reaching for an extended period of time caused chest pain; she did not endorse any limitation in the ability to sit; she could stand for 15 to 20 minutes before needing to sit down; and could not lift over 10 pounds. T. 28; 48-49, 52-53, 56, 61. She testified that she lived alone, but received assistance from her adult children. She performed tasks and activities as tolerated, and could attend to personal care, prepare food for herself, and perform some household chores such as washing

9

dishes and vacuuming. *Id.* Plaintiff could drive on occasion, attend medical appointments, shop, attend church about once per month, sometimes go out to eat, and spend time with her grandchildren. *Id.* Plaintiff's own testimony suggested relatively normal levels of daily activity. T. 32.[5] It appears that the ALJ, giving Plaintiff the benefit of the doubt, credited at least some of her allegations to the extent that they were consistent with sedentary work (lifting no more than 10 pounds) and limited her to occasional overhead reaching. T. 27.

In addition, the Court notes that the medical records contain sufficient evidence of Plaintiff's functional abilities for the ALJ to properly formulate the RFC. Plaintiff's examination records documented that she was "neurologically intact," with normal gait and station were normal. T. 263, 828. Her extremities had no abnormalities, she had no focal deficits, could enter the examination room without assistance, was alert, fully oriented, and breathed easily at rest. T. 276, 312-13, 329, 422, 888, 964. On examination, Plaintiff's joints, bones, muscles, and range of motion were largely normal/unremarkable. T. 455, 461, 479, 497. The treatment notes also indicate benign findings with respect to her cardiovascular and pulmonary ailments. *See, e.g.*, T. 276 (dyspnea and wheezing upon exertion; no acute distress, clear lungs); 312-313 (normal

---

[5] More specifically, Plaintiff testified that she could do no pulling, not too much walking, and she performed daily chores in moderation. She drove, shopped, went out to eat, and visited with her mother, children, and grandchildren. She told the ALJ that her prior job as a medical claims representative was too fast-paced (high volume calls, quotas), and the stress caused her to have chest pains and suffer shortness of breath resulting in her hospitalizations. She had episodes of chest pains a couple of times per month, which passed after a few minutes, after which she would require a period of rest. Likewise, Plaintiff testified upon questioning by her attorney that she suffered shortness of breath, due to sarcoidosis, a couple of times per month. She reiterated that the major issue she had in returning to her previous job was the stress level. Her physicians told her not to lift over 10 pounds, to avoid bending forward due to her heart condition, and that she could not reach overhead for periods of time. T. 41-64.

review of symptoms, no new complaints); 329 (no murmur/gallop of heart, clear lungs); 395 (normal chest x-ray).

In summary, the ALJ considered Plaintiff's medical treatment notes, her subjective complaints, self-reports, activities of daily living, and testimony regarding her limitations. Simply because the ALJ did not obtain a function-by-function analysis from one of the medical sources was not legal error:

> The question is not whether the ALJ obtained such assessments or statements from any particular clinician or as to any particular condition . . . Rather, a medical source statement is not necessarily required to fully develop the record where "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." Likewise, "remand is not necessary merely because an explicit function-by-function analysis was not performed."

*Crespo v. Comm'r of Soc. Sec.*, No. 18-CV-00435, 2019 WL 4686763, at *3 (D. Conn. Sept. 25, 2019) (quoting *Tankisi*, 521 Fed. Appx. at 34, and *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

In this case there was sufficient evidence in the record from which the ALJ could assess Plaintiff's RFC: voluminous medical records, which included treatment notes and objective test results; a consultative examiner's report; a treating physician opinion letter; and Plaintiff's own testimony and reported daily activities. The ALJ did not rely on her own lay opinion in formulating the RFC, but formulated the RFC based on the record as a whole, as she was obligated to do. *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 Fed. Appx. 75, 79 (2d Cir. 2018); *but see Sherry v. Berryhill*, 2019 WL

441597, at *5 (W.D.N.Y. Feb. 5, 2019) ("The Court cannot conclude that there was substantial evidence to support the ALJ's RFC determination that [the] plaintiff was capable of light work with restrictions and is left without a clear indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data.").

The RFC was therefore supported by substantial evidence, and the ALJ did not commit legal error by failing to utilize a medical opinion with a function-by-function analysis.

### The ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ did not apply the appropriate legal standard in discounting her allegations of disabling symptoms. Dkt. #10-1 at 24.

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must "'carefully consider'" all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p)).

SSR 16-3p provides that the evaluation of symptoms involves a two-step process. 2017 WL 5180304, at *2. The SSA "will first consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. "[O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [SSA will then] evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . . ." *Id.* If SSA cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, it will "carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms." *Id.* at *6.

In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, factors to be considered include: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2017 WL 5180304, at *7-8.

The ALJ applied the two-step process, finding that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. Accordingly, Plaintiff's "statements have been found to affect [her] ability to work only to the extent they can reasonably be accepted as consistent with the objective and other evidence." T. 28.

In reaching this conclusion, the ALJ observed that Plaintiff's clinical functional examinations were essentially normal. T. 29-31; 377-78, 263, 276, 282, 312-13, 328-29, 442, 455, 461, 479, 497, 888, 964. *See* 20 C.F.R. § 404.1529(c)(4) (an ALJ considers the objective evidence in evaluating a claimant's complaints); *Lewis v. Colvin*, 548 Fed. Appx. 675, 678 (2d Cir. 2013) (unpublished) (the ALJ's decision to discount a claimant's subjective testimony regarding his symptoms was appropriate where that testimony was not supported by the objective medical evidence).

The ALJ also noted "evidence of significant medical noncompliance" with treatment, citing several examples from the record. T. 27, 28, 31-32; *see* 20 C.F.R. § 404.1529(c)(4). For example, Plaintiff was regularly noncompliant with her CPAP machine, even though she reported that she felt better when using it. T. 29-30, 32; 440, 475, 890, 902, 979). Additionally, Plaintiff was not compliant with her heart medication, even when it helped her feel better. T. 28, 32; 885, 890, 902, 961, 979. The ALJ therefore reasonably considered Plaintiff's noncompliance with treatment in evaluating

14

her subjective complaints. *Wilson v. Colvin*, No. 16-CV-6509, 2017 WL 2821560, at *6 (W.D.N.Y. June 30, 2017) (unpublished) (an ALJ may reasonably consider a pattern of noncompliance to be a negative factor in considering subjective complaints); *Lee v. Colvin*, No. 13-CV-1151, 2015 WL 3505791, at *6, (W.D.N.Y. June 3, 2015) (an ALJ is permitted to "consider plaintiffs noncompliance with treatment as a factor weighing against [her] credibility").[6]

        The ALJ also considered Plaintiff's activities of daily living in her analysis. T. 32; *see* 20 C.F.R. § 404.1529(c)(3)(i). She observed that Plaintiff lived alone, attended to her personal care, prepared food, performed some household chores, handled a savings account, paid bills, drove on occasion, attended medical appointments, went shopping, attended church once a month, ate out occasionally, and spent time with her grandchildren. T. 48-56, 61. The ALJ also noted that Plaintiff attended an Italian Heritage Festival, and also went to the Erie County Fair, activities which involve a good deal of walking. T. 32. She acknowledged that Plaintiff testified that she had bad days, on which she had difficulty standing and walking and that her adult children helped her. T. 27-28. Overall, the ALJ properly considered Plaintiff's activities of daily living and concluded that they were inconsistent with her allegations of disabling symptoms. *See Rusin v. Berryhill*, 726 Fed. Appx. 837, 840 (2d Cir. 2018) (severe limitations claimed by the plaintiff were inconsistent with the plaintiff's report that he "cooked simple meals daily, left the house daily, can drive, and shopped for groceries every two weeks"). While it is true that the capability to perform activities of

---

[6] In making this assessment, the ALJ also necessarily considered the factors of medications and other treatments. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2017 WL 5180304, at *7-8.

15

daily living is not inherently inconsistent with a finding of disability, "[t]he law is clear that the ALJ may consider . . . [a claimant's] purported activities of daily living for the purposes of a credibility determination." *Cahill v. Astrue*, No. 11-CV-148, 2012 WL 3777072, at *5 (D. VT. Aug. 29, 2012).[7]

Finally, Plaintiff claims that the ALJ overlooked her long-standing work history of 23 years. Dkt. #10-1 at 25-26. Contrary to this assertion, the ALJ recognized that Plaintiff had a "long-term job as a patient representative" that ended when she had chest pain and shortness of breath while working. T. 27-28. It is thus clear from the face of the decision that the ALJ was aware of Plaintiff's work history and factored it, along with several other considerations, into her disability determination and the analysis of Plaintiff's subjective complaints. *See, e.g., Campbell v. Astrue*, 465 Fed. Appx. 4, 7 (2d Cir. 2012) (summary order) ("Although it is true that a good work history may be deemed probative of credibility, it remains just one of many factors appropriately considered in assessing credibility.") (quotations omitted).

In sum, the ALJ's evaluation of Plaintiff's subjective complaints is supported by substantial evidence and remand is not warranted on this ground.

The Court understands that Plaintiff may disagree with the ALJ's assessment of the evidence. However, it bears repeating that it is not the Court's role to

---

[7] SSR 16-3p eliminated the use of the term "credibility" from the agency's sub-regulatory policy, and "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." *Id.* The standard for evaluating a claimant's subjective symptoms has not changed in the regulations.

"decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner." *Cushman v. Saul*, No. 19 CV 344, 2020 WL 1466220, at *6 (D. Conn. Mar. 26, 2020). "[W]hether there is substantial evidence supporting the [plaintiff's] view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision" *Bonet ex rel. T.B. v. Colvin*, 523 Fed. Appx. 58, 59 (2d Cir. 2013) (unpublished) (citations omitted)). "If the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). Reviewing all of the above evidence under this lens, the Court finds the ALJ's decision was supported by substantial evidence and free of legal error.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings, Dkt. #10, is DENIED, and the Commissioner's cross-motion, Dkt. #13, is GRANTED. The Clerk of Court is ordered to close the file.

**SO ORDERED.**

DATED:   Buffalo, New York
         March 27, 2020

                                    **s/ H. Kenneth Schroeder, Jr.**
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**